**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION**

IN RE SUBPOENA FOR DOCUMENTS
ISSUED TO PENINSULA PATHOLOGY
ASSOCIATES

Case No. _____

Related Case: S.D.N.Y.: 1:20-cv
5589-GBD

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

BACKGROUND & PROCEDURAL HISTORY ............................................................2

    A.    Peninsula Pathology Associates & Dr. Emory's Study ................................2

    B.    The Underlying S.D.N.Y. Litigation ...........................................................3

    C.    AII's Subpoena & The Meet and Confer Process.........................................4

LEGAL STANDARD........................................................................................................6

ARGUMENT .....................................................................................................................8

    I.    THE SUBPOENA IS UNTIMELY. ...........................................................8

    II.    RULE 45 REQUIRES QUASHING THE SUBPOENA BECAUSE
        COMPLIANCE WOULD SUBJECT NON-PARTY PENINSULA TO
        AN UNDUE BURDEN. ..............................................................................10

    III.    COMPLIANCE WITH THE SUBPOENA WOULD REQUIRE
        DISCLOSURE OF "PRIVILEGED OR OTHER PROTECTED
        MATTER," IN CONTRAVENTION OF RULE 45(d)(3)(A)(iii) .............................15

    IV.    AII SHOULD BEAR PENINSULA'S EXPENSES INCURRED IN
        CONNECTION WITH RESPONDING TO THIS UNTIMELY AND
        IMPROPER SUBPOENA ..........................................................................18

CONCLUSION..................................................................................................................21

## INTRODUCTION

This Motion to Quash arises out of a third-party subpoena issued by American International Industries ("AII") in connection with a lawsuit proceeding in the Southern District of New York, in which the plaintiff, Brian Gref, alleges that he developed mesothelioma as a result of exposure to cosmetic talc products sold by the defendants in that case. Petitioner Peninsula Pathology Associates ("Peninsula") is not a party to the *Gref* litigation, nor have any of its employees been involved in or disclosed as experts in that litigation. The single thread connecting Peninsula to the *Gref* case is that one of Peninsula's officers, Dr. Theresa Emory, co-authored and published a peer-reviewed article in early 2020 reporting the results of a study she (and others) conducted of 75 anonymous human subjects pertaining to the link between cosmetic talc and mesothelioma. Since then, AII has been on a mission to try to elicit confidential information about the human subjects involved in Dr. Emory's study, and other studies like it. This time, AII has swung even bigger, issuing a far-reaching (and untimely) subpoena containing 40 requests seeking everything from the identities of the anonymous study participants, to Peninsula's financial records for the past five years, to Dr. Emory's communications with various lawyers (the "Subpoena"). As explained below, the Subpoena should be quashed for at least three reasons.

*First*, the Subpoena is untimely. Discovery in the *Gref* litigation has been closed for nearly a year, and there is no reason why AII could not have issued the subpoena during the discovery period. It is settled law that Rule 45 subpoenas are discovery devices subject to the same deadlines as other fact discovery, and the Subpoena should be quashed on this basis alone.

*Second*, Rule 45(d)(3)(A)(iv) requires that a court "***must*** quash or modify" a subpoena that "subjects a person to undue burden" Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). The Subpoena here is overbroad on its face, seeking information that goes far beyond the scope of

permissible discovery from a non-party with no relationship to the underlying case, and several of the requests seek plainly irrelevant information, which is a per se undue burden.

*Third*, Rule 45(d)(3)(A)(iii) similarly mandates that a subpoena "must" be quashed if it "requires disclosure of privileged or other protected matter" where no exception or waiver applies. Among other things, AII asks Peninsula to divulge highly sensitive and confidential information concerning the identities of research subjects. Courts across the country have long rejected similar efforts, and same result should hold here.

Finally, because the Subpoena is so wildly improper—both with respect to its contents and the fact that it was issued at all at this stage in the *Gref* litigation—AII should be ordered to bear Peninsula's fees and costs in filing and litigating this Motion and otherwise responding to the Subpoena. Under Rule 45(d)(1), courts "***must*** . . . impose an appropriate sanction" on an issuing party that violates its obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena" (emphasis added). Here, AII took no steps to avoid imposing an undue burden or expense on Peninsula, and the Court's obligation to impose sanctions therefore is clear.

## BACKGROUND & PROCEDURAL HISTORY

### A. Peninsula Pathology Associates & Dr. Emory's Study.

Peninsula Pathology Associates ("Peninsula") is a medical practice that has been providing pathology services to physicians throughout Eastern Virginia for more than 50 years. Ex. 1, Decl. of Dr. David M. Smith, MD ¶ 3 ("Smith Decl."). Dr. Theresa Emory, a physician who is board-certified in anatomic and clinical pathology, is one of Peninsula's officers (Vice President). Ex. 2, Decl. of Dr. Theresa S. Emory, MD ¶ 2 ("Emory Decl.").

In February 2020, Dr. Emory—along with Drs. John Maddox and Richard Kradin—

authored a peer-reviewed article entitled "Malignant mesothelioma following repeated exposures to cosmetic talc: A case series of 75 patients," which was subsequently published in March 2020 in the American Journal of Industrial Medicine (the "Article"). Emory Decl. ¶ 3 & Attach. A. The Article was based on the authors' analysis of certain records associated with 75 individuals with malignant mesothelioma who reportedly had no known asbestos exposure other than to cosmetic talcum powder. *Id*. ¶ 4. Pursuant to the Department of Health and Human Services and the Food and Drug Administration Regulations, the 75 human subjects were anonymized in the paper. *Id*. ¶ 5. The Article concluded that "[t]he findings of the present and other recent studies suggest that cosmetic talc may be a cause of malignant mesothelioma." *Id.*, Attach. A.

Dr. Emory conducted the underlying study and authored the Article in her personal capacity separate and apart from any affiliation with Peninsula. *Id*. ¶ 6. Dr. Emory's co-author and Peninsula employee Dr. John Maddox assisted with the Article, but also on his own time. Ex. 3, Decl. of Dr. John C. Maddox, MD ¶ 4 ("Maddox Decl."). No other Peninsula staff were involved in researching or drafting the Article, nor did Peninsula provide any resources or compensation to research or conduct the study, or to draft or publish the Article. Emory Decl. ¶¶ 6–7; Smith Decl. ¶ 5; Maddox Decl. ¶ 4.

### B. The Underlying S.D.N.Y. Litigation

In July 2020, Brian Gref filed suit against AII and other defendants in New York state court. Shortly thereafter, the case was removed to federal court. Not. of Removal, *Gref v. Am. Int'l Indus., et al.*, No. 1:20-cv-5589 (S.D.N.Y. July 20, 2020), ECF No. 1. Mr. Gref's complaint alleges that "[d]uring his daily use of cosmetic talc products, [he] was exposed to and came in contact with Defendants' asbestos-containing talc products from approximately 1982 until 2019," and that he developed mesothelioma in late November 2019 as a result of these repeated exposures. Am.

Compl. ¶ 1, *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Feb. 2, 2021), ECF No. 42.

Fact discovery closed in the *Gref* litigation on November 30, 2021. Memo Endorsement, *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Oct. 13, 2021), ECF No. 163. Expert discovery was scheduled to close on July 29, 2022, Ltr., *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Jan. 26, 2022), ECF No. 217, but the court granted a limited extension of that deadline to October 7 "to complete expert depositions," Ltr., *Gref*, No. 1:20-cv-5589 (S.D.N.Y. July 29, 2022), ECF No. 250. AII did not attempt to subpoena or otherwise take discovery from Peninsula or any of its employees during the discovery period (nor did any other party in the *Gref* case). Neither Dr. Emory nor any other member of Peninsula's practice has been disclosed as an expert or otherwise participated in any way in the *Gref* litigation. Emory Decl. ¶ 9; Smith Decl. ¶ 7; Maddox Decl. ¶ 5.

### C. AII's Subpoena & The Meet and Confer Process

On November 7, 2022—more than a year after the close of fact discovery in *Gref*—AII served the instant Subpoena. *See* Smith Decl. ¶ 2 & Attach. A (the "Subpoena"). The Subpoena is directed at Peninsula and enumerates 19 document requests, the first of which contains 21 separate sub-requests. *See id.* at No. 1(a)–(u). The Subpoena does not include any temporal limitation. *See generally id.* It defines the terms "You" and "your" broadly to mean "the Deponent to whom these Requests are directed, as well as your predecessors, successors, divisions, affiliates, parents, subsidiaries, officers, directors, employees, agents, and anyone else acting or purporting to act on your behalf." *Id.* at Definition No. 1. Despite the fact that the Subpoena is directed solely at Peninsula, *see id.* at 1, the Instructions define "Deponent" to mean "Dr. Theresa S. Emory" (*i.e.*, not Peninsula), *id.* at Definition No. 8.

As described in more detail below, the Subpoena seeks documents relating to three broad categories: (i) the Article and underlying study (Request Nos. 1–3, 5, 6, 9, 18(i)); (ii) Peninsula

and Dr. Emory's billing documents, income, and other financial records (Request Nos. 1(i), 4, 7, 8, 10, 11); and (iii) SDNY plaintiff Mr. Gref (Requests Nos. 12–18). It also contains one request stating: "If you contend that any materials otherwise responsive to these requests are in any way exempt from disclosure on any basis . . . create a list identifying all such materials for in camera inspection by the Court." *Id.* at Request No. 19.

**Documents relating to the Article and underlying study.** *See* Subpoena Request Nos. 1–3, 5, 6, 9, 18(i). AII seeks broad discovery concerning Dr. Emory's Article and the underlying study, including, among other things:

- Documents relating to the Article's peer review process and study protocol. *See* Subpoena Request Nos. 1(a), 1(c), 1(m)–(q).

- Litigation files reviewed in connection with the Article. *See* Subpoena Request Nos. 1(b), 1(e)–(f), 1(k), 1(l), 5.

- Underlying data and other documents generated or reviewed in connection with the Article. *See* Subpoena Request Nos. 1(d), 1(g)–(h), 1(j), 1(s)–(u), 2, 18.

- Documents relating to the human subjects included in the study and Article. *See* Subpoena Request Nos. 1(r), 3, 5, 6.

- Communications with counsel relating to the Article. *See* Subpoena Request Nos. 1(b), 1(e), 1(i), 1(j), 1(q), 1(r), 3.

**Documents relating to Peninsula and Dr. Emory's income, billing documents, and other financial records.** *See* Subpoena Request Nos. 1(i), 4, 7, 8, 10, 11. The requests concerning this topic include:

- All documents relating to Dr. Emory's retention and income earned for work concerning asbestos exposure. *See* Subpoena Request Nos. 1(i), 4, 10.

- "Financial records indicating all money that Dr. Emory, or the company of which she is an owner, have earned in connection with cosmetic talc consultation or litigation in the last 5 years." *See* Subpoena Request No. 7.

- "All documents reflecting amounts Dr. Emory, or the company of which she is an owner, have billed Simmons Hanly Conroy LLC in the last 5 years for any kind of litigation or consultation" and "[a]ll correspondence, invoices, bills, statements, IRS Form 1099, other

income tax records, and other documents relating to the compensation paid for Deponent's work or testimony done for and/or at the request of the law firm of Simmons Hanly Conroy LLC, over the last five (5) years." *See* Subpoena Request Nos. 8, 11.

**Documents relating to SDNY Plaintiff Mr. Gref.** *See* Subpoena Request Nos. 12–18.

The requests concerning this topic include:

- "All notes, correspondence, records, instrument tapes, slides, charts, x-rays, reports, opinions, tape recordings," "photographs, calculations, worksheets, working papers, memoranda," "and every other documents of every kind or description" relating to Mr. Gref. *See* Subpoena Request Nos. 12, 13, 17.

- "Any materials Deponent ever possessed or reviewed that relate to any of the locations where Mr. Gref worked during his lifetime." *See* Subpoena Request No. 14.

- "Any materials Deponent reviewed or created that relates to the calculation of dose related to Mr. Gref, if any." *See* Subpoena Request No. 15.

- "Any materials Deponent ever possessed or reviewed that relate to Mr. Gref's potential exposure to "asbestos" from any source other than cosmetic talc." *See* Subpoena Request No. 16.

The parties met and conferred on November 15. Counsel for Peninsula stated its position that the Subpoena was untimely and improper and should be withdrawn. Ex. 4, Declaration of Kathryn M. Ali ¶ 3 ("Ali Decl."). Counsel for AII expressed their views that there is no prohibition on third party discovery after the close of fact discovery and that discovery is ongoing because certain expert depositions remain outstanding. *Id.* ¶ 4. This Motion follows.

## LEGAL STANDARD

"[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Singletary v. Sterling*, 289 F.R.D. 237, 240–41 (E.D. Va. 2012) (citing *Cook v. Howard*, 484 Fed. App'x 805, 812 (4th Cir. 2012)). Rule 45 subpoenas, therefore, "may only be used to compel production of information that is discoverable under Rule 26." *Harris v. Vanderburg*, No. 4:19-CV-111-D, 2021 WL 91612, at *2 (E.D.N.C. Jan. 11, 2021) (citation and internal quotation marks omitted). *See also Jones v. Campbell Univ.*, No. 5:20-CV-29, 2020 WL

4451173, at *2 (E.D.N.C. Aug. 3, 2020) ("Rule 45 adopts the standard codified in Rule 26 in determining what is discoverable.") (citation omitted).

Rule 26(b), in turn, limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Importantly, "simply because 'requested information is discoverable under Rule 26[b] does not mean that discovery must be had.'" *Jones*, 2020 WL 4451173, at *2 (quoting *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). This is particularly so when it comes to third-party discovery. "When discovery is sought from nonparties . . . its scope must be limited even more. Nonparties are 'strangers' to the litigation, and since they have 'no dog in [the] fight,' they have 'a different set of expectations' from the parties themselves." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (citation omitted). "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* Third-party subpoenas are therefore subject to "[a] more demanding variant of the proportionality analysis" to determine whether "a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified" on that basis. *Id.* ("[C]ourts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally.").

Rule 45(3) carves out several express exceptions to disclosure for non-party subpoenas. Specifically, Rule 45(3) provides that a court "must quash or modify a subpoena" that "requires

disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii) & (iv). Rule 45(d)(1), for its part, requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." And it commands that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.*

## ARGUMENT

### I.   THE SUBPOENA IS UNTIMELY.

As a threshold matter, the Court need not even consider the substance of the Subpoena because it is untimely and should be quashed on that basis alone. *Builders Ass'n of Greater Chicago v. City of Chicago*, No. 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) (it is a *per se* undue burden to have to address "an illegitimate subpoena") (internal quotation marks and citations omitted).

"A subpoena that seeks documents under Federal Rule of Civil Procedure 45 is a discovery device subject to the same deadlines as other forms of discovery set forth in the court's scheduling order." *McGuire v. Warner*, No. 05-40185, 2009 WL 2370738, at *1–2 (E.D. Mich. July 29, 2009) (collecting cases). *See also, e.g.*, Randolph Stuart Sergent, *Federal Document Subpoenas and Discovery Deadlines,* 34–Oct. MD. B.J. 54, 58 (2001) ("The clear recent trend is to treat Rule 45 subpoenas as a discovery device governed by the discovery deadline."); *Wachtell v. Cap. One Fin. Corp.*, No. CV 03-267, 2006 WL 8446017, at *5 (D. Idaho May 9, 2006), *modified on clarification,* No. CV 03-267, 2006 WL 8446082 (D. Idaho June 29, 2006) (Rule 45 subpoenas are "a discovery method within the meaning of the Federal Rules" and therefore subject to the same discovery deadlines). Accordingly, "Rule 45 subpoenas may not be used to circumvent the

discovery deadlines," *Wantanable Realty Corp. v. City of New York*, 159 F. App'x 235, 240 n.2 (2d Cir. 2005), and courts in this District and this Circuit (and elsewhere) routinely quash subpoenas served outside of the discovery period. *See, e.g.*, *McAfee v. Boczar*, No. 3:11CV646, 2012 WL 2505263, at *1 (E.D. Va. June 28, 2012) (denying motion to reconsider decision to quash subpoena served after discovery closed); *Harrison v. Kennedy*, No. 3:18-CV-0057, 2019 WL 3712187, at *1–2 (D.S.C. Aug. 7, 2019) (quashing subpoena served after close of discovery); *Jefferson v. Biogen IDEC Inc.*, No. 5:11-CV-00237, 2012 WL 1150415, at *2 (E.D.N.C. Apr. 5, 2012) (quashing subpoena issued "several weeks after completion of discovery" and noting that courts "routinely" do the same).[1]

Fact discovery in the underlying action closed on November 30, 2021—almost exactly one year ago. *See* Memo Endorsement, *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Oct. 13, 2021), ECF No. 163. AII has offered no explanation for why it chose not to serve the Subpoena during the discovery period. Nor could it do so: AII has been aware of Dr. Emory's study since at least September 2020—shortly after the *Gref* litigation was filed and more than a year before the fact discovery cutoff. *See, e.g.*, Hr'g Tr at 90:11–14, *Bell v. Am. Int'l Indus*, No. 1:17-cv-111 (M.D.N.C. Oct. 7, 2020), ECF No. 212-2 (Sept. 2020 motion hearing at which AII appeared as a defendant where

---

[1] *See also, e.g.*, *Ghandi v. Police Dept. of the City of Detroit*, 747 F.2d 338, 354–55 (6th Cir.1984) (affirming decision to quash Rule 45 subpoena issued after discovery deadline); *FIP Realty Co. v. Ingersoll-Rand plc*, No. 2:19-CV-3291, 2020 WL 6060412, at *3 (S.D. Ohio Oct. 14, 2020) (quashing subpoenas served "nearly two months after the close of discovery . . . This Court does not take such open defiance of its scheduling orders lightly. Further, the Court is wary to suggest that any party may circumvent a scheduling order simply by serving a third-party subpoena and hoping the subject of the subpoena does not object. That is not how the Federal Rules of Civil Procedure work."); *McGuire*, 2009 WL 2370738, at *2 (rejecting subpoena served after close of discovery period); *Dag Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 104 (D.D.C. 2005) (similar); *Dodson v. CBS Broad, Inc.*, No. 02 Civ 9270, 2005 WL 3177723, at *1 (S.D.N.Y. Nov. 29, 2005) (similar); *Integra Lifesciences I, Ltd., v. Merck KgaA*, 190 F.R.D. 556, 561 (S.D. Cal. 1999) (similar).

Dr. Emory's name and the Article were mentioned numerous times). In fact, she was deposed *by AII* about the Article *four times* in another case (by the same counsel now representing AII in the *Gref* case)—for a total of approximately 24 hours of testimony—all while discovery in *Gref* was still open. Emory Decl. ¶ 8.

Nor can AII credibly argue that the Subpoena is somehow timely because *expert* discovery is ongoing. First of all, expert discovery is also technically closed. *See* Ltr., *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Jan. 26, 2022), ECF No. 217 (scheduling order stating expert discovery would close July 29, 2022); Ltr., *Gref*, No. 1:20-cv-5589 (S.D.N.Y. July 29, 2022), ECF No. 250 (allowing parties to until October 7, 2022 "complete expert depositions," but otherwise not modifying any prior scheduling order).[2] In any event, neither Dr. Emory nor any other Peninsula employee has been retained or disclosed as an expert in this case, Emory Decl. ¶ 9, Smith Decl. ¶ 7, Maddox Decl. ¶ 5, so there is no basis to take discovery from them as part of expert discovery.

This should be the end of the matter; "[a] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Jordan v. E.I. du Pont de Nemours & Co.*, 867 F. Supp. 1238, 1250 (D.S.C. 1994).

## II.    RULE 45 REQUIRES QUASHING THE SUBPOENA BECAUSE COMPLIANCE WOULD SUBJECT NON-PARTY PENINSULA TO AN UNDUE BURDEN.

That AII waited to serve the subpoena until fact discovery had been closed for nearly a year—and then served its kitchen-sink document subpoena on an improper third party—should be dispositive. But Rule 45 also requires that a court "***must*** quash or modify" a subpoena that

---

[2] While AII's counsel represented during the November 15 meet and confer that there was no prohibition on third-party discovery at this phase, they were unable to cite any court order extending discovery past the October 7 deadline listed in the *Gref* court's scheduling order, Ltr., *Gref*, No. 1:20-cv-5589 (S.D.N.Y. July 29, 2022), ECF No. 250, nor to any other authority supporting their argument that discovery remains open. Ali Decl. ¶ 4.

"subjects a person to undue burden," as this Subpoena seeks to do. Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added).

Third-party subpoenas "must be narrowly crafted to relevant subject matter in the underlying litigation." *Virginia Dep't of Corr. v. Jordan*, No. CV 3:17MC02, 2017 WL 5075252, at *3–5 (E.D. Va. Nov. 3, 2017), *aff'd*, 921 F.3d 180 (4th Cir. 2019) (quoting *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. 3:16-MC-1, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016)). To this end, a subpoena that is irrelevant or overbroad "necessarily establishes undue burden."[3] *ThompsonMcMullan*, 2016 WL 1071016, at *5. *See also Jordan*, 2017 WL 5075252, at *15 (courts must quash "any subpoena that seeks evidence" that is not "relevant" or is "so overbroad that compliance . . . will necessarily require production of irrelevant evidence").

Furthermore, because "non-party status is one of the factors the Court considers in assessing the burden of imposing" third-party discovery, *Jordan*, 2017 WL 5075252, at *20, courts "give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance," *Eshelman v. Puma Biotechnology, Inc.*, No. 7:16-CV-18-D, 2017 WL 5919625, at *4 (E.D.N.C. Nov. 30, 2017) (internal quotation marks and citations omitted). *See also Jordan*, 921 F.3d at 188 ("[C]ourts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally."). As the Fourth Circuit has explained:

> When discovery is sought from nonparties, however, its scope must be limited even more. Nonparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason,

---

[3] The 2013 Amendments to Federal Civil Rule 45 moved the sanctions provision from Fed. R. Civ. P. 45(c)(1) to Fed. R. Civ. P. 45(d)(1). Cases that pre-date the 2013 amendments (and some after, presumably by mistake) therefore cite Rule 45(c)(1) as the sanctions provision. For ease of reference, this brief substitutes "([d](1))" where quoting cases that cited to the language from the now-outdated Rule 45(c)(1).

even if they have information that falls within the scope of party discovery . . . A more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified.

*Jordan*, 921 F.3d at 188 (alteration in original) (internal citation omitted).

Here, Peninsula had nothing to do with the Article. Emory Decl. ¶¶ 6–7; Smith Decl. ¶ 5. Dr. Emory and her co-author conducted that study and published the Article in their personal capacity, wholly separate and apart from any affiliation with Peninsula. Emory Decl. ¶¶ 6–7; Maddox Decl. ¶ 4. The burden of requiring Peninsula to respond to a far-reaching (and untimely) subpoena vastly outweighs whatever minimal "need" AII may claim for the information at issue. *Jordan*, 2017 WL 5075252, at *16 (Rule 45 prohibits discovery as unduly burdensome where harm to the subpoena recipient "outweighs the need of the person seeking discovery of the information"). This is so for four reasons.

*First*, neither Dr. Emory nor any other member of Peninsula's medical practice has been retained as an expert in the *Gref* case. Smith Decl. ¶ 7; Emory Decl. ¶ 9; Maddox Decl. ¶ 5. Nor has Dr. Emory or any other member of Peninsula's staff been disclosed as a potential witness, or been involved in the litigation in any other capacity. Smith Decl. ¶ 7; Emory Decl. ¶ 9; Maddox Decl. ¶ 5. Rather, the only supposed connection between Peninsula and the *Gref* litigation is that Dr. Emory conducted a medical study and published a paper that the *Gref* plaintiff may wish to rely on and which AII evidently "does not like." *Rosa v. City of Seaside*, No. 05-03577, 2009 WL 2382760, at *2 (N.D. Cal. July 29, 2009). But that is not a basis to subject Dr. Emory's medical practice to intrusive and burdensome third-party discovery. *Id.* ("Although [issuing party] says that the Study is the central study to plaintiffs' case," this does not "equate[] to a substantial need for . . . requiring third-party production of documents relating to the Study."). As numerous courts have recognized, "reliance of the opposing party on a study does not entitle the moving party to a fishing

expedition in order to attack a report that it dislikes." *Id.*[4] To find otherwise and compel discovery "from a third party researcher risks chilling participation in beneficial public research." *In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789, 2009 WL 2395899, at *4 (S.D.N.Y. Aug. 4, 2009) (granting motion to quash subpoena issued to third-party researcher, because it created a "serious danger" of threatening the "ardor and fearlessness of scholars," qualities that are "indispensable for fruitful academic labor.") (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (J. Frankfurter, concurring)). To the extent AII seeks to undermine any reliance by the *Gref* plaintiff on the Article, "surely [AII] has its own experts" who can offer opinions on that subject. *Rosa*, 2009 WL 2382760, at *2.

*Second*, AII's "delay in serving discovery" on Peninsula "severely hampers" its ability to demonstrate a compelling need for the nonparty discovery at issue. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 411 (C.D. Cal. 2014) (granting motion to quash third-party subpoena issued at end of discovery). A party's "late service" of a subpoena "undermines any claim" that the third-party discovery at issue "is essential" to a party's defense. *Id.* If AII "truly considered" Peninsula to be a "critical" source of relevant information, "it is unlikely that it would have waited" until *after* the close of fact discovery to issue the Subpoena. *Id.* (quashing subpoena issued "just six weeks before the close of discovery" because information sought was not "directly relevant" to party's defense). AII's delay in issuing the Subpoena therefore significantly undermines any argument that it is necessary to obtain relevant information,

---

[4] *See also Buchanan v. Am. Motors Corp.*, 697 F.2d 151, 152 (6th Cir. 1983) (affirming decision to quash subpoena seeking third-party researchers' documents that pertained to an article examining the safety of defendant's vehicles, where the researcher was "not an expert witness or adviser to any party to that litigation"); *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 249 F.R.D. 8, 12–15 (D. Mass. 2008) (granting protective order to protect third-party medical journal from defendant's subpoena seeking documents related to peer review of articles discussing the pharmaceutical drugs at issue in the litigation).

particularly in light of the undue burden the Subpoena would impose on Peninsula. *See* 8B Charles Alan Wright et al., Federal Practice and Procedure § 2285 (3d ed. 2010 & Supp. 2015) (delay in pursuing discovery undermines the importance of discovery sought). *See also generally Fed. Ins. Co. v. Kingsbury Properties, Ltd.*, No. 90 CIV. 6211, 1992 WL 316163, at *5 (S.D.N.Y. Oct. 21, 1992) (party's delay in pursuing issue "largely undercuts any claim of a pressing need").

*Third*, the Subpoena's requests for various Peninsula billing documents and invoices, *see* Subpoena Request Nos. 1(i), 4, 7, 8, 10, 11, is invasive, harassing, and unduly burdensome given that these documents cannot possibly have "any bearing on the truth or veracity" of the underlying claims in the *Gref* litigation. *M.R. by & through N.R. v. Tajdar*, No. CV TDC-17-3836, 2019 WL 3323207, at *4 (D. Md. July 24, 2019) (granting motion to quash third-party subpoena for medical bills). Among other things, the Subpoena seeks any and all "[f]inancial records indicating all money that Dr. Emory, or the company of which she is an owner, have earned in connection with cosmetic talc consultation or litigation in the last 5 years." *See* Subpoena Request No. 7. This appears to be a thinly-veiled attempt to collaterally attack the credibility of a third-party researcher's conclusions—despite the fact that neither Dr. Emory nor any Peninsula employee has any testifying (or other) role whatsoever in the *Gref* litigation. Emory Decl. ¶ 9; Smith Decl. ¶ 7; Maddox Decl. ¶ 5. Because AII cannot possibly justify its invasive requests for this and other irrelevant financial information—particularly in light of the undue burden it would impose on Peninsula—the Court should quash each of these Requests on this basis alone.

*Fourth*, Request No. 19—which demands that Peninsula "create a list identifying" any materials "otherwise responsive" to the Subpoena but withheld "on *any* basis"—is an improper interrogatory to a non-party in violation of Federal Rule of Civil Procedure 33. *See* Fed. R. Civ. P. 33 (interrogatories may be issued to a "party" only). Even putting that aside, this request is vague

and unduly burdensome, as it purports to require Peninsula to, for example, identify and list copies of responsive documents that are duplicative and not produced on that basis.

## III.    COMPLIANCE WITH THE SUBPOENA WOULD REQUIRE DISCLOSURE OF "PRIVILEGED OR OTHER PROTECTED MATTER," IN CONTRAVENTION OF RULE 45(d)(3)(A)(iii).

Rule 45(d)(3)(A)(iii) provides a separate and additional basis to quash the Subpoena because it seeks to compel the production of "privileged or other protected matter," and "no exception or waiver applies." Specifically, Request Nos. 1–3, 5, 6, 9, and 12–18 ask Peninsula to divulge, among other things, information that could reveal the identities of and other information concerning the 75 human subjects from the study.[5] As an initial matter, while the Subpoena is directed at Peninsula, Dr. Emory conducted the study on her own time, using her own resources, and in her personal capacity wholly independent from her affiliation with Peninsula. Emory Decl. ¶ 6. But even setting that aside and assuming for purposes of this Motion that Dr. Emory could be considered the target of the Subpoena, neither Peninsula nor she should be required to disclose this highly sensitive and protected information.

The identities of the 75 human subjects have never been revealed and it would be inappropriate to require such disclosure in *any* context—let alone in response to an untimely subpoena served on a third party with no relationship whatsoever with the underlying litigation at issue. *See Andrews v. Eli Lilly & Co.*, 97 F.R.D. 494, 498 (N.D. Ill. 1983), *vacated sub nom. on other grounds Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984) (noting that the author of the study containing the research subjects for which defendants were seeking

---

[5] The Subpoena also contains several broad requests for communications between Peninsula and various lawyers. To the extent those requests seek documents that would be covered by the attorney-client privilege or work product doctrine, such information would also be prevented from disclosure under Fed. R. Civ. P. 45(d)(3)(A)(iii).

disclosure "will not be a witness at trial on the merits," which "tends to reduce [defendant's] need for the data"). As Dr. Emory has attested, she has an ethical obligation to maintain the anonymity of the study participants at issue, and were she required to disclose this information, it could put her medical license in jeopardy. Emory Decl. ¶ 10. More generally, and as courts have long recognized, confidentiality and patient privacy are "essential to the ability of researchers to obtain data." *Andrews*, 97 F.R.D. at 499. *See also Lampshire v. Proctor & Gamble Co.*, 94 F.R.D. 58, 60 (N.D. Ga. 1982).

For these reasons, courts confronted with similar requests have routinely ruled in favor of safeguarding information concerning research and other medical studies, including the identities of human subjects included in them. *See, e.g.*, *Andrews*, 97 F.R.D. at 499 (shielding disclosure of human subjects); *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985) (affirming decision to keep identities of medical study participants confidential); *Lampshire*, 94 F.R.D. at 60–61 (granting protective order over all personal identifying information about participants in study conducted by the CDC); *Richards of Rockford, Inc. v. Pacific Gas & Elec. Co.*, 71 F.R.D. 388, 389 (N.D. Cal. 1976) (similar). Indeed, in other recent litigation involving claims concerning cosmetic talc and many of the same defendants as those named in the *Gref* litigation, courts have protected the anonymity of research subjects like those in Dr. Emory's study except where they were parties to the litigation and deceased.[6]

---

[6] *See Gref*, No. 1:20-cv-5589 (S.D.N.Y. Nov. 4, 2022), ECF No. 265-5 (trial transcript excerpt in *Fisher v. Am. Int'l Indus.*, No. 19070087 (Pa. C.P. Oct. 13, 2022) (another talc case involving AII) in which court held that identification of a study subject would be inappropriate, even where AII was attempting to match the identity of a subject to a plaintiff in a case in which AII was a named defendant); *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Nov. 4, 2022), ECF No. 265-3 (order in *Bell v. Am. Int'l Indus*, 1:17-cv-111 (M.D.N.C. Sept. 13, 2022) (another talc case involving AII) protecting anonymity of research subjects with the exception of the individual named plaintiff upon finding that (1) she was a party to the litigation and had thus placed her identity within the realm of discoverability, and (2) she no longer qualified as a "human subject" under 45 C.F.R. §

The same result should hold here. Balancing any supposed hardship imposed on AII by denying access to the information against the hardship imposed on Peninsula and the harms that would flow to scientists, physicians, and patients across the country compels the conclusion that this information should be protected from disclosure. First of all, and as noted above, that AII waited until long after discovery had closed to seek this information undermines any argument by AII regarding its supposed need for it. *See supra* § II. If this information were truly critical—a dubious proposition given that we are talking about the subjects of a research study of a non-party with no connection to the litigation at hand—AII no doubt would have sought it during the discovery period. More fundamentally, a litigation defendant's desire for (at most) marginally relevant information cannot reasonably be deemed sufficient to outweigh the need to protect the personal, sensitive, and confidential information at issue. If such information were disclosed—in response to a non-party subpoena, no less—it could impede the ability of physicians and scientists to investigate and accumulate data on diseases and other health conditions. *See* Emory Decl. ¶ 11. *See also, e.g.*, *Farnsworth*, 758 F.2d at 1547 (plaintiff's "interests in keeping its study participants' names confidential outweigh the discovery interests of [the defendant]," in part, because "the ability to conduct probing scientific and social research" could be "seriously damage[d]" given "an expectation, not unjustified, that when highly personal and potentially embarrassing information is given for the sake of medical research, it will remain private."); *Andrews,* 97 F.R.D. at 502 ("The balance in this case tips in favor of Dr. Herbst. Squibb's need for the evidence is . . . essentially [a] private interest in defending itself [and] is outweighed by the compelling social

46.111(a)(7) because she had passed during the pendency of the litigation); *Gref*, No. 1:20-cv-5589 (S.D.N.Y. Nov. 4, 2022), ECF No. 265-4 (ruling from the bench in *Johnson/Lashley v. Am. Int'l Indus.*, Nos. MID-L-006651-16 and MID-L-007336-16 (N.J. Super. Ct. Law Div. Mar. 11, 2020) (another talc case involving AII) refusing to compel discovery of identities of human research subjects).

interest in preventing harm to the Registry and the vital work it conducts."); *Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646 (D.S.C. 1989) (denying motion to compel identity of blood donor the plaintiff claimed caused her to contract HIV because privacy interests outweighed plaintiff's need for questioning).

Additionally, the Health Insurance Portability and Accountability Act ("HIPAA") provides a standalone basis for preserving the anonymity of the research subjects.[7] Because Peninsula and Dr. Emory are "covered entities" under HIPAA, and because de-identifying research subjects would divulge their protected health information—namely, that they have mesothelioma—it would be improper under HIPAA for Peninsula to identify the research subjects.

## IV.   AII SHOULD BEAR PENINSULA'S EXPENSES INCURRED IN CONNECTION WITH RESPONDING TO THIS UNTIMELY AND IMPROPER SUBPOENA.

AII's issuance of this untimely, inappropriate, and unduly burdensome subpoena also warrants sanctions against AII and its counsel under Rule 45(d)(1).

"Under Rule 45(d)(1), when a party issues a subpoena without taking 'reasonable steps to avoid imposing undue burden or expense' on a third party, the issuing court '***must*** . . . impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees'—on the party or attorney responsible for the failure to do so." *Breaking Media, Inc. v. Jowers*, No. 21-msc-194, 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (quoting Fed. R. Civ. P. 45(d)(1)) (emphasis added). Courts typically undertake a two-part inquiry to determine whether sanctions are warranted

---

[7] *See* 45 C.F.R. § 160.103 (defining "protected health information" as "individually identifiable health information," which in turn is defined as "information that is a subset of health information, including demographic information collected from an individual, and: (1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) That identifies the individual; or (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.").

under Rule 45(d)(1): "[i] whether the challenged subpoena imposed an undue burden or expense on the person(s) subject thereto; and [ii] if so, what, if any, 'reasonable steps' the subpoenaing party and its counsel took to avoid imposing such a burden." *Saint-Jean v. Emigrant Mortg. Co.*, No. 11-cv-2122, 2015 WL 13735434, at *3 (E.D.N.Y. Oct. 7, 2015) (citation omitted). As explained below, both prongs are met here.

To satisfy the first prong, "courts have recognized that the 'undue burden' analysis is tied to the relevance of the material sought and is directly related to the court's decision to quash a subpoena for imposing an undue burden." *Breaking Media*, 2021 WL 1299108, at *7. "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45([d])(1)." *Builders Ass'n*, 2002 WL 1008455, at *4 (internal quotation marks and citation omitted). *See also Saint-Jean*, 2015 WL 13735434, at *5 (same). That precisely describes this Subpoena, on several scores. As a threshold matter, AII waited until a year after discovery in the underlying action closed to issue this Subpoena, which alone makes it invalid and automatically unduly burdensome. *See supra* § II. And even if the Court could somehow look past that fatal defect—which it should not—the Subpoena is improper for a host of other reasons, including that it seeks information that is irrelevant, harassing, and protected from disclosure under settled law. *See supra* §§ II, III.

As for the second prong, once a court determines that a subpoena imposes an undue burden, it must then "examine what, if any, 'reasonable steps' [the party serving the subpoena] took to avoid imposing such a burden." *Saint-Jean*, 2015 WL 13735434, at *5 (citations omitted). "The Rule places this burden on the party issuing the subpoena, not the person subjected to them." *Id.* Here, the inquiry for the Court is simple: AII took no steps to avoid imposing an undue burden on non-party Peninsula. Instead, it served an out-of-time, harassing, and unduly burdensome

Subpoena, and refused to withdraw it despite not being able to point to any court order showing that discovery in *Gref* remained open. Courts routinely impose sanctions in circumstances like these. *See, e.g.*, *Wachtell*, 2006 WL 8446017, at *8 (imposing sanctions where subpoenas were served after close of fact discovery and quashed on that basis); *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03-cv-1382, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash.").[8]

In fact, Rule 45(d)(1) mandates that result. *See, e.g.*, *BNSF Ry. Co. on behalf of United States v. Ctr. for Asbestos Related Disease, Inc.*, No. CV 19-40-M, 2022 WL 1442854, at *5 (D. Mont. May 6, 2022) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."); *BMO Harris Bank, N.A. v. Richert Funding, LLC*, No. 1:15-CV-3886, 2017 WL 11627485, at *10 (N.D. Ga. July 3, 2017) (collecting cases standing for the proposition that Rule 45(d)(1) sanctions are mandatory where serving party fails to take reasonable steps to minimize burden and expense on recipient).

This is so even if the issuing party acted in good faith in serving the subpoena at issue. *BNSF Ry. Co.*, 2022 WL 1442854, at *5 ("Importantly, a showing of bad faith is not necessary,

---

[8] *See also, e.g.*, *Breaking Media*, 2021 WL 1299108, at *8 (issuing sanctions where respondent refused to narrow scope of subpoena in response to objections); *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23, 2020 WL 4700910, at *3 (S.D.N.Y. Aug. 13, 2020) (granting Rule 45 sanctions where issuing party "took no steps to modify the subpoena upon notice of its deficiencies"); *Am. Int'l Life Assurance Co. v. Vasquez*, No. 02 Civ. 141, 2003 WL 548736, at *2–3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions and awarding fees incurred in bringing motion to quash after attorney issuing subpoena refused to withdraw improper subpoena).

and Rule 45(d)(1) sanctions may be warranted even when a party or attorney acts in good faith.")
(citation omitted); *Saint-Jean*, 2015 WL 13735434, at *5–6 (similar). While bad faith is a
"sufficient" basis to impose sanctions, it is not necessary. *BMO Harris Bank*, 2017 WL 11627485,
at *11. This is because "Rule 45 places more emphasis on the recipient's burden than on the
issuer's motives." *Id. See also, e.g.*, *Georgia-Pac. LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278
F.R.D. 187, 190 (S.D. Ohio 2010) ("So long as the duty to avoid imposing an undue burden is
violated, it is of no consequence that the party or attorney who served the subpoena acted in good
faith."). Accordingly, "in determining whether an award of attorney's fees as a sanction under Rule
45 is warranted, the relevant question is whether there has been a breach or violation of counsel's
duty to take reasonable steps to avoid imposing undue burden or expense upon the person subject
to the subpoena." *BMO Harris Bank*, 2017 WL 11627485, at *11. AII breached its obligations
here, and should be held accountable. It would be wholly inequitable to force Peninsula—a
nonparty with no connection to the underlying litigation—to bear the significant costs of
responding to a patently improper subpoena.

## CONCLUSION

For the foregoing reasons, Petitioner Peninsula Pathology Associates respectfully requests
that the Court (i) grant this Motion and (ii) require AII to bear all of Peninsula's fees and costs in
responding to the inappropriately issued Subpoena pursuant to Rule 45(d)(1).

Dated: November 18, 2022                    Respectfully submitted,

                                            */s/ Kathryn M. Ali*
                                            _____

                                            Kathryn M. Ali (VSB No. 97966)
                                            Elizabeth Lockwood (*pro hac vice*
                                            *application forthcoming*)
                                            ALI & LOCKWOOD LLP

300 New Jersey Avenue N.W., Suite 900
Washington, D.C. 20001
(202) 651-2475
katie.ali@alilockwood.com
liz.lockwood@alilockwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2022, I electronically filed the foregoing Memorandum In Support of Motion to Quash with the Clerk of the court using the CM/ECF system, which will send notification of such filing to the following: N/A.

I further hereby certify that I will deliver by electronic mail this document to the following non-filing users:

**COUNSEL FOR PLAINTIFF:**

James M. Kramer
Simmons Hanly Conroy, LLP
112 Madison Avenue, 7th Floor
New York, NY 10016
jkramer@simmonsfirm.com

**COUNSEL FOR ISSUING DEFENDANT:**

Alfred J. Sargente
Hawkins Parnell Young, LLP
600 Lexington Avenue, 8th Floor
New York, NY 10022-7678
asargente@hpylaw.com

Robert E. Thackston
Lathrop GPM
2101 Cedar Springs Road, Suite 1400
Dallas, TX 75201
robert.thackston@lathropgpm.com

By:  /s/ Kathryn M. Ali