**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**PENINSULA PATHOLOGY**
**ASSOCIATES,**

        **Plaintiff,**

**v.**
                                               **Case No. 4:22-mc-1**

**AMERICAN INTERNATIONAL**
**INDUSTRIES,**

        **Defendant.**

## ORDER

This matter is before the court on Peninsula Pathology Associates' ("Peninsula") motion for an award of attorney's fees. (ECF No. 12). Peninsula seeks attorney's fees from American International Industries ("AII") for its failure to comply with Federal Rule of Civil Procedure 45(d)(1) when issuing a third-party subpoena in connection with litigation pending in the United States District Court for the Southern District of New York. AII opposed the motion.[1] (ECF No. 19). For the reasons set forth below, after reviewing the parties' briefing and exhibits, the court concludes that Peninsula is entitled to attorney's fees and costs of $44,610.45.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

AII is a manufacturer of cosmetic products and a named defendant in Gref v. Am. Int'l Indus., et al., No. 1:20-cv-5589, which is currently being litigated before the United States District Court for the Southern District of New York. Order (ECF No. 11, at 1). In that case, which was

---

[1] Briefing on the attorney's fees motion was concluded previously, but the underlying motion upon which sanctions were based was before the District Judge on objections. The court overruled the objections on August 14, 2023. (ECF No. 24).

filed in July 2020, AII faces allegations from plaintiff Brian Gref that he developed mesothelioma as a result of repeated exposure to asbestos from using cosmetic talc products manufactured by AII and other named defendants. Id. Peninsula, a pathology services provider operating throughout Eastern Virginia, is not involved in the Gref litigation. Id. However, Mr. Gref's experts—Dr. Jacqueline Moline and Dr. Murray Finkelstein—have each opined that Mr. Gref developed malignant mesothelioma as a result of exposure to cosmetic talc. Id. at 2. In support of their opinions, both experts submitted detailed expert reports which briefly cited an article ("the Article") co-authored by Peninsula's employee, Dr. Theresa S. Emory. Id. at 1–2. The Article, which was published in March 2020 in the American Journal of Industrial Medicine, analyzes the medical and legal records of 75 individuals with malignant mesothelioma whose only known, reported exposure to asbestos came from cosmetic talcum powder. Id. at 2. The authors' brief analysis concludes that "cosmetic talc may be a cause of malignant mesothelioma." Id.

On November 7, 2022, AII served a third-party subpoena on Peninsula requesting 40 separately described categories of documents related to (1) "the Article and underlying study;" (2) "Peninsula and Dr. Emory's billing documents, income, and other financial records;" and (3) "SDNY plaintiff Mr. Gref." Id. Peninsula responded by filing a motion to quash in this court, (ECF No. 1), arguing that the subpoena should be quashed—and sanctions imposed—under Federal Rule of Civil Procedure 45(d)(1), Mem. Supp. Mot. Quash ("Mot. Quash Mem.") (ECF No. 2, at 12–17, 20–23). AII opposed Peninsula's motion. (ECF No. 4). The court held a hearing on the motion, and for the reasons stated on the record during the hearing and explained in its subsequent written order, (ECF No. 11), the court granted Peninsula's motion to quash and found that AII's subpoena warranted sanctions. The court took the issue of appropriate sanctions under advisement and ordered Peninsula to file an accounting of its costs, followed by a response from

2

AII. Order (ECF No. 11, at 8). In keeping with that order, Peninsula filed its motion for attorney's fees, (ECF No. 12), which AII opposed, (ECF No. 19). Having previously determined that sanctions are warranted, the issue of appropriate sanctions is now ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 states that, when a party or attorney fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to [a] subpoena," the court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees." Fed. R. Civ. P. 45(d)(1). The plain text of Rule 45(d)(1) dictates that any attorney's fees imposed as a sanction must be "reasonable." Id. The court evaluates the reasonableness of attorney's fees using a three-step "lodestar" method. Torres-Baez v. Giovenco-Montano, No. 2:20cv580, 2022 WL 15482678, at *2 (E.D. Va. Oct. 4, 2022), R. & R. adopted by 2022 WL 14975888 (E.D. Va. Oct. 26, 2022). First, the court must determine the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended . . . ." Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). In determining what constitutes a reasonable billing rate and number of hours, the Fourth Circuit has directed courts to consider twelve factors (the "Lodestar Factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting factors in Johnson v. Ga.

Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989))).

After determining the lodestar amount, the court then excludes fees for counsel's time spent on unsuccessful claims. Id. at 244. Lastly, after performing a lodestar calculation and excluding unsuccessful claims, the court awards "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)).

The lodestar method generates a presumptively reasonable fee. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564–65 (1986). It is within the court's discretion, however, upon consideration of the lodestar factors, to adjust the lodestar figure up or down. Lyle v. Food Lion, Inc., 954 F.2d 984, 989 (4th Cir. 1992). Any adjustment should be done "on a principled basis, clearly explained by the Court." Stewart v. VCU Health Sys. Auth., No. 3:09CV738-HEH, 2012 WL 1120755, at *2 (E.D. Va. 2012) (quoting citations omitted). When requesting attorneys' fees, "[t]he moving party has the burden of establishing the reasonableness of the requested amount both by showing the reasonableness of the rate claimed and the number of hours spent." Rutherford Controls Int'l Corp. v. Alarm Controls Corp., No. 3:08cv369, 2009 WL 4015357, at *2 (E.D. Va. Nov. 17, 2009) (quoting Rehab. Ass'n of Va., Inc. v. Metcalf, 8 F. Supp. 2d 520, 527 (E.D. Va. 1998)) (cleaned up).

### III.    ANALYSIS

Peninsula requests attorney's fees in the amount of $99,400.00, which accounts for 142 hours of work at an hourly rate of $700.00. Mot. Award Attys' Fees ("Peninsula's Mot.") ¶¶ 8, 16 (ECF No. 12, at 4, 7). Alternatively, in the event the court determines an hourly rate of $700.00 is too high, Peninsula seeks an hourly rate of $600.00, which lowers the requested total to

$85,200.00. Id. ¶¶ 9, 16 (ECF No. 12, at 4, 7). In either scenario, Peninsula also seeks an additional $400.45 for filing and transcript costs. Id. ¶ 16 (ECF No. 12, at 7). AII argues that the requested fees are unreasonable and asks the court to "reject or significantly limit" them.[2] Resp. Mot. Award Attys' Fees ("AII's Resp.") (ECF No. 19, at 1–3). For the reasons set forth below, after reviewing the lodestar factors, I agree in part with AII but conclude the record submitted supports a reasonable partial award.

A.      **The Lodestar Factors Do Not Support the Requested Fees, But Do Support a Partial Award.**

Although the court looks to all the lodestar factors when determining reasonable attorney's fees, certain factors are more relevant than others. See Flame S.A. v. Indus. Carriers, Inc., No. 2:13-cv-658, 2014 WL 4809842, at *4 (E.D. Va. 2014). Consequently, the court need not examine "each factor in extensive detail." Stewart, 2012 WL 1120755, at *2 (citing Barber, 577 F.2d at 266). Ultimately "the matter of attorney fees rests . . . within the sound discretion of the trial judge, who is in the best position to determine whether, and to what extent, they should be awarded." Guidry v. Clare, 442 F. Supp. 2d 282, 295 (E.D. Va. 2006) (quoting Kimberly–Clark Corp. v. Johnson & Johnson, 745 F.2d 1437, 1458 (Fed. Cir. 1984)) (cleaned up). As discussed below, factors one through three, five, nine, and twelve are most relevant here.

---

[2] AII also argues that sanctions are not warranted in any event because AII's subpoena did not impose an undue burden on Peninsula, and because record evidence demonstrates AII's efforts to reduce the burden imposed. AII's Resp. (ECF No. 19, at 3–6). However, the court already evaluated and rejected these arguments when they were raised in AII's brief opposing Peninsula's motion to quash, Resp. Opp'n Mot. Quash (ECF No. 4, at 15–17, 25–26), and during the hearing on that motion, Hr'g Tr. 9:18–25, 21:25–22:3, 25:25–26:14 (ECF No. 10). AII then raised these claims again in its objections to the court's ruling, Mem. Supp. Obj. (ECF No. 18, at 15–17), which was recently affirmed by the District Judge, (ECF No. 24). For those reasons, the court will not reconsider AII's undue burden arguments here.

1.      **An hourly rate of $500 is reasonable for the necessary work, in the relevant market.**

The first step in the lodestar method is determining a reasonable hourly rate. In determining the reasonableness of fees, the court may consider affidavits of local lawyers familiar with the skills of the fee applicants and the legal work in the relevant legal community. Robinson, 560 F.3d at 244. The court may also consider affidavits testifying to the applicants' own rates, skill, and experience. Id. (citing Plyler v. Evatt, 902 F.2d 273, 278 (4th Cir. 1990)). In the instant motion, Peninsula requests attorney's fees at an hourly rate of $700.00. Peninsula's Mot. ¶ 8 (ECF No. 12, at 4). Alternatively, in the event the court determines an hourly rate of $700.00 is too high, Peninsula seeks an hourly rate of $600.00. Id. ¶ 9. In support of its request, Peninsula submits an affidavit from its attorney, Kathryn M. Ali, attesting to her qualifications and those of her co-counsel, Elizabeth Lockwood. Peninsula's Mot., Ex. 1 ("Ali Aff.") ¶¶ 1–8 (ECF No. 12-1, at 2–4). The affidavit also addresses the nature of the work performed and the basis for the requested hourly rate. Id. ¶¶ 9–24 (ECF No. 12-1, at 4–12). Although the court may consider Peninsula's affidavit, "[Peninsula] must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [it] seeks an award." Robinson, 560 F.3d at 244. The court finds lodestar factors two, three, five, nine, and twelve to be material to the calculation of that rate.

a.      **Factors Two, Three, and Nine**

Factors two, three, and nine—which are, respectively, "the novelty and difficulty of the questions raised; . . . the skill required to properly perform the legal services rendered; [and] . . . the experience, reputation and ability of the attorney"—all bear on the rate an attorney may reasonably charge for their services. Robinson, 560 F.3d at 243. Two attorneys have billed work on this matter—Ms. Ali, who has approximately 12 years of experience litigating

6

complex commercial disputes, and Ms. Lockwood, who has approximately 9 years of experience in the same practice area. Ali Aff. ¶¶ 3–6 (ECF No. 12-1, at 2–3). Ms. Ali and Ms. Lockwood are the founding partners of Ali & Lockwood LLP, a Washington, D.C.-based firm specializing in civil rights and commercial litigation. Id. ¶ 8 (ECF No. 12-1, at 4). The firm was engaged by Peninsula in this matter at a rate of $700 per hour. Id. Between them, Ms. Ali and Ms. Lockwood are licensed to practice law in Virginia, Washington, D.C., New York, California, and Maryland. Id. ¶¶ 1–2, 5 (ECF No. 12-1, at 2–3).

In her affidavit, Ms. Ali claims that "[t]his was not a typical or straightforward third-party subpoena, and so required a more involved and time-consuming response than would be customary for a motion to quash." Id. ¶ 12 (ECF No. 12-1, at 5). She highlights the "nearly 40 requests" in the subpoena spanning multiple categories of documents, some of which contained confidential human subject information; the "nearly 700 pages of material" filed by AII in opposition to Peninsula's motion to quash, much of which related to and required research into the underlying Gref litigation; and AII's "long history in other cosmetic talc litigation," which counsel felt compelled to review in anticipation that AII would use that history to "muddle the record" in this case. Id. ¶¶ 12–15 (ECF No. 12-1, at 5–7). Ms. Ali also points out that this matter "is not merely a local dispute among local actors," but rather involves litigation pending in the United States District Court for the Southern District of New York against a Los Angeles-based company represented by counsel from major cities in multiple states. Id. ¶ 20 (ECF No. 12-1, at 9–10).

AII does not dispute the qualifications of Peninsula's counsel other than to point out that they "are inexperienced in talc litigation generally." AII's Resp. (ECF No. 19, at 20). However, AII argues repeatedly that "the issues arising from [AII's] subpoena to [Peninsula] 'did not present complex or novel legal issues and did not require extensive fact-finding.'" Id. at 8 (citing Route

_Triple Seven Ltd. P'ship v. Total Hockey, Inc._, 127 F. Supp. 3d 607, 619 (E.D. Va. 2015)).  To

the contrary, AII believes the "skills required to draft the brief [in support of Peninsula's motion

to quash] rested on basic principles of discovery."  _Id._ at 11.  It argues that Peninsula's arguments

regarding the subpoena's timeliness, relevance, and privilege were "typical and straightforward,"

_id._ at 20, and that opposing counsels' need to conduct background research to gain familiarity with

talc litigation was merely part of an attorney's "basic education," which is not a basis for awarding

fees, _id._ at 11 (citing _Frei v. Hartford Life Ins. Co._, No. C-05-01191 EDL, 2006 WL 1409360, at

*4 (N.D. Cal. May 23, 2006)).  AII also contends that the simplicity of the matter is evidenced by

the fact that Peninsula's response to "nearly every request [was] essentially identical," and those

that were not identical were "substantively the same."  _Id._ at 8–9.

     I largely agree with AII and find that the issues raised in this matter did not require

extensive specialized legal skills, nor were they sufficiently complex to support Peninsula's

request for an hourly rate of either $700 or $600.  Although the documents sought contained human

subject information, which created a conflict over privilege, the issues presented have been

thoroughly reviewed already given Peninsula's prior and more direct engagement in these

contentious disputes.  But while the legal issues were straightforward the motion became factually

complex when AII filed almost 700 pages of exhibits in response to Peninsula's motion to quash.

21 of those exhibits were documents from the underlying _Gref_ litigation, which Peninsula's

counsel needed to review in order to best defend their client.  The exhibits also contained excerpts

of deposition or trial transcripts from no less than 22 additional cases, which compelled further

fact investigation.  Having burdened the record with this cumulative evidence, AII can have no

complaints with the natural and foreseeable consequence of that decision—a complex and lengthy

review by Peninsula's counsel. Additionally, Ms. Ali and Ms. Lockwood are well-learned lawyers with approximately 20 years of combined experience litigating commercial matters.

### b.   Factors Five and Twelve

Factors five and twelve are also relevant to the reasonable hourly rate inquiry. Factor five is "the customary fee for like work," while factor twelve is "attorneys' fees awards in similar cases." Robinson, 560 F.3d at 243–44. As noted above, it is Peninsula's burden to "produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [it] seeks an award." Id. Generally, the "relevant community" is the community "where the district court sits." Grissom, 549 F.3d at 321. However, out-of-district rates may be appropriate when "services of like quality truly [are not] available in the locality where the services are rendered; and . . . the party choosing the attorney from elsewhere act[ed] reasonably in making that choice." Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988).

Here, the Hampton Roads area is the relevant community because it is "where the district court sits." Grissom, 549 F.3d at 321. However, Peninsula does not appear to put forth any evidence that its primary requested rate of $700 per hour is reasonable for this market. In fact, Peninsula seemingly concedes that a $700 hourly rate is unreasonable for Hampton Roads by requesting a lower, $600 hourly rate if the court "is nevertheless inclined to apply Norfolk/Newport News-rates." Peninsula's Mot. ¶ 9 (ECF No. 12, at 4). Peninsula's argument appears to be that the "relevant community" is either Northern Virginia or Washington, D.C., and that the requested $700 hourly rate is reasonable for those markets. See id. ¶¶ 10–11 (ECF No. 12, at 4–5). That being the case, the court must first conduct the Hanson analysis to determine whether a departure from the general rule is warranted.

9

The issue before the court is (1) whether "services of like quality" to those rendered by Ms. Ali and Ms. Lockwood were unavailable in the Hampton Roads area, and (2) whether Peninsula "acted reasonably" in retaining counsel located outside this community. Hanson, 859 F.2d at 317. With regard to the first element—whether "services of like quality truly [are not] available in the locality where the services are rendered," Hanson, 859 F.2d at 317—Peninsula's motion and accompanying exhibits provide little direct evidence that similar, capable representation was unavailable in the Hampton Roads area. It has not represented an attempt to retain counsel here, nor asserted that this locality lacks counsel qualified to handle the matter. See Johnson v. Ford Motor Co., No. 3:13-cv-06529, 2018 WL 14440833, at *4 (S.D.W. Va. Mar. 22, 2018) (denying request for extrajurisdictional rates where the Plaintiffs provided "no explanation for how they selected counsel; no evidence that they searched other local firms for comparable attorneys; and no corroboration that the extrajurisdictional attorneys in [the] case provided a unique service that could not be offered by less expensive and equally available counsel"). Additionally, Peninsula does not claim to have retained Ali & Lockwood LLP in any prior litigation, such that the firm would possess institutional and relational knowledge helpful in litigating this case. See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, No. 5:01CV100-V, 2005 WL 6124839, at *2 (W.D.N.C. May 31, 2005), aff'd 472 F.3d 99 (4th Cir. 2006) (granting request for out-of-market rates where counsel had "institutional and intimate knowledge of the client" from years of prior representation); Aventis CropScience, N.V. v. Pioneer Hi-bred Intern, Inc., No. 1:00CV463, 2010 WL 2306677, at *5 (M.D.N.C. Jun. 8, 2010) (granting request for out-of-market rates where counsel's prior representation of the client "foster[ed] familiarity with the client and the issues involved in the litigation, as well as greater overall efficiency").

Instead, Peninsula offers <u>indirect</u> evidence relating to the complexity and multidistrict nature of the case, arguing that these factors necessitate national counsel and that suitable national counsel <u>are available</u> in Washington, D.C.  <u>See</u> Peninsula's Mot. ¶ 7 (ECF No. 12, at 3–4).  It emphasizes that this matter "is not merely a local dispute among local actors," but rather involves litigation pending in the United States District Court for the Southern District of New York against a Los Angeles-based company represented by counsel from multiple states.  <u>Id.</u> ¶ 7 (ECF No. 12, at 3–4).  In light of this fact, "[a]nd given that AII's counsel ha[d] indicated an intent to continue pursuing Peninsula and/or Dr. Emory for the information they seek in other cases," Peninsula believes "it was in [the organization's] interest to hire national rather than local counsel so it would be prepared and well-positioned to effectively and efficiently defend against [those] future efforts."  <u>Id.</u>

AII disagrees with these arguments, claiming that Peninsula's stated reasons for hiring national counsel are insufficient to meet its burden to "produce evidence that local counsel could not handle the case."  AII's Resp. (ECF No. 19, at 20) (citing <u>Mostaed v. Crawford</u>, Nos. 3:11-cv-79-JAG, 3:11-cv-82-JAG, 2012 WL 3947978, at *5 n.2 (E.D. Va. Sept. 10, 2012) (citing <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 31 F.3d 169, 175, 179 (4th Cir. 1994)); <u>Torres-Baez</u>, 2022 WL 15482678, at *4; <u>Yamaha Motor Corp., U.S.A. v. Jim's Motorcycle, Inc.</u>, 381 F. Supp. 2d 499, 504 (E.D. Va. 2005)).  AII also questions Peninsula's choice of counsel given that "neither Ms. Ali nor Ms. Lockwood are experienced in talc litigation generally."  <u>Id.</u>

I agree with AII.  While the <u>implication</u> of Peninsula's evidence is that Hampton Roads lacks lawyers capable of serving as its national counsel, it has failed to proffer any evidence <u>directly</u> supporting that conclusion.  "[T]he test articulated by the Court of Appeals imposes, on the fee applicant, the burden to show that . . . no attorney with the required skills was available

locally." Yamaha Motor Corp., U.S.A., 381 F. Supp. 2d at 504. Where the showing made by the fee applicant "simply does not address this point at all," there is no basis for awarding out-of-market rates. Id. at 505; see also Mostaed, 2012 WL 3947978, at *5 n.2. Because Peninsula has failed to show that sufficient counsel were unavailable in Hampton Roads, I conclude that it is not entitled to out-of-locality rates.

As mentioned above, Peninsula requests rates of $700 per hour or $600 per hour. Ms. Ali argues in her affidavit that both proposed rates are reasonable under the matrix established by the Alexandria Division of this court in Vienna Metro LLC v. Pulte Home Corp., No. 1:10-cv-00502, 2011 WL 13369780, at *6 (E.D. Va. Aug. 24, 2011). Ali Aff. ¶ 21 (ECF No. 12-1, at 10–11). The Vienna Metro matrix sets forth prevailing market rates for commercial litigation attorneys in Northern Virginia. Vienna Metro LLC, 2011 WL 13369780, at *6. Under the matrix, the hourly rate for an attorney with 8 to 10 years of experience, such as Ms. Lockwood, is $465 to $640, while the hourly rate for an attorney with 11 to 19 years of experience, such as Ms. Ali, is $520 to $770. Id. Ms. Ali claims that this district regularly uses the Vienna Metro matrix to set reasonable rates in commercial litigation, citing—alongside other cases[3]—the undersigned's order in United States v. Leebcor Servs., LLC, No. 4:20-cv-179, 2022 WL 3337793, at *6 (E.D. Va. Apr. 1, 2022). Ali Aff. ¶ 21 (ECF No. 12-1, at 10–11). AII disputes the applicability of the Vienna Metro matrix, arguing that matrix only applies to the Northern Virginia market—not the Hampton Roads market. AII's Resp. (ECF No. 19, at 19).

---

[3] Ms. Ali also cites Order at 6, Wingate v. Fulford, No. 1:18-cv-937 (E.D. Va. Oct. 19, 2022); Rogers v. Va. State Registrar, No. 1:19-cv-1149, 2020 WL 3246327, at *4–5 (E.D. Va. Jan. 23, 2020); Hilton Franchise Holding LLC v. HC Southfield LLC, No. 1:19-CV-610, 2019 WL 13093107, at 3–4, n.2 (E.D. Va. Oct. 15, 2019).

The <u>Vienna Metro</u> matrix was established over a decade ago to reflect market rates in Northern Virginia at that time and is therefore most frequently used in the Alexandria Division of this court. <u>Bethune-Hill v. Va. State Bd. of Elections</u>, No. 3:14cv852, 2020 WL 5577824, at *8 n.8 (E.D. Va. Sept. 17, 2020) (declining to adopt the <u>Vienna Metro</u> matrix). Indeed, three of the four cases Peninsula cites were decided in the Alexandria Division. <u>See</u> Ali Aff. ¶ 21 n.5 (ECF No. 12-1, at 10). When this division has used the <u>Vienna Metro</u> matrix, it has done so to determine the reasonableness of fees requested by firms based in Northern Virginia. <u>See, e.g</u>, <u>Torres-Baez</u>, 2022 WL 15482678, at *6 (applying <u>Vienna Metro</u> matrix to determine reasonable rates "in the prevailing market, Alexandria"); <u>Intelligent Verification Sys., LLC v. Microsoft Corp.</u>, 2:12-cv-525, 2014 WL 6685440, at *4–5 (E.D. Va. Nov. 25, 2014) (using the <u>Vienna Metro</u> matrix to determine rates for counsel based in Falls Church, Virginia). <u>Leebcor</u>—the one decision Peninsula cites that was decided in this division—followed the same approach and applied the <u>Vienna Metro</u> matrix because the retained attorney practiced in Northern Virginia. <u>Leebcor Servs., LLC</u>, 2022 WL 3337793, at *6.

As Peninsula points out, for an attorney of Ms. Ali's experience (12 years), the <u>Vienna Metro</u> matrix suggests an appropriate rate lies between $520 and $770 per hour, while an attorney of Ms. Lockwood's experience (9 years) would receive a rate between $465 and $640 per hour. <u>Vienna Metro LLC</u>, 2011 WL 13369780, at *6. The lower end of these ranges closely aligns with rates previously awarded in this division for work related to discovery motions. <u>See</u> <u>Flame S.A.</u>, 2014 WL 4809842, at *4 (finding a rate of $520 per hour reasonable for a partner working on a motion to compel and a motion for sanctions); <u>PRA Financial Servs., LLC v. AutoTrakk, LLC</u>, No. 2:17cv392, 2018 WL 1472490, at *4 (E.D. Va. Mar. 26, 2018) (finding a rate of $500 per hour reasonable for a partner working on a motion to compel). Based on these benchmarks, the

13

foregoing lodestar factors, Peninsula's motion, its attorney's affidavit, and the court's own knowledge and experience in similar disputes, the court finds that an hourly rate of $500 is reasonable for the work described and performed.

**2.    90.72 hours is a reasonable amount of time to expend on the work performed in this matter.**

The second step in the lodestar method is determining a reasonable number of hours to have expended on the work performed. It is the fee applicant's burden to produce documentation of the hours worked and exercise "billing judgment." Hyatt v. Barnhart, 315 F.3d 239, 253 (4th Cir. 2002) (citing Hensley v. Eckerhart, 461 U.S. 424, 433–34, 437 (1983)). Billing judgment requires counsel "to excise from its claim time not properly shown to have been incurred in pursuit of the matter at issue or that is otherwise not reasonable in amount or not necessarily incurred." SunTrust Mortg., Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 774 (E.D. Va. 2013) (citing Hensley, 461 U.S. 433–34). In the instant motion, Peninsula seeks attorney's fees for 142.0 hours of work. Peninsula's Mot., Ex. 4 ("Billing Log") (ECF No. 12-4, at 2). The court finds factors one, two, three, and nine to be helpful in examining the reasonableness of these expended hours.

**a.    Factors Two, Three, and Nine**

As discussed above, factors two, three, and nine are, respectively, "the novelty and difficulty of the questions raised; . . . the skill required to properly perform the legal services rendered; [and] . . . the experience, reputation and ability of the attorney." Robinson, 560 F.3d at 243. All three of these factors bear on the amount of time an attorney may reasonably expend on their work. An attorney facing a difficult legal problem requiring a high degree of skill, or an attorney with less experience, can reasonably be expected to spend more time working on a matter than an attorney facing a simple legal issue or an attorney with more experience. As already stated, Ms. Ali and Ms. Lockwood are capable and experienced attorneys who have litigated commercial

14

disputes for nearly 20 years between them. As such, the reasonableness of their work on this matter will be judged against the standards of timeliness and efficiency held by attorneys with commensurate experience.

      **b.**    **Factor One**

Factor one—"the time and labor expended"—is perhaps most pertinent to the court's calculation of reasonable hours. Here, Peninsula seeks attorney's fees for 142.0 hours of work. Billing Log (ECF No. 12-4, at 2). In support of Peninsula's request, Ms. Ali argues that "[t]his was not a typical or straightforward third-party subpoena, and so required a more involved and time-consuming response than would be customary for a motion to quash." Ali Aff. ¶ 12 (ECF No. 12-1, at 5). She alleges that the broad scope of the subpoena required preparation of "detailed" objections, which took 9.2 hours. Id. ¶¶ 12, 16 (ECF No. 12-1, at 5, 8). Counsel then spent 47.6 hours preparing the motion to quash and accompanying declarations. Id. ¶¶ 13, 16. Peninsula notes the "nearly 700 pages of material" filed by AII in response to the motion to quash, which required "comprehensive review" and fact investigation into the underlying Gref litigation and other talc cases. Id. ¶ 13 (ECF No. 12-1, at 5–6). In total, counsel spent 64.2 hours conducting this review and preparing the reply in support of the motion to quash. Id. ¶ 16 (ECF No. 12-1, at 8). Peninsula claims that the hours spent on the motion to quash and reply were justified not only because of the quantity of material reviewed, but also because of the complexity of the matter. Id. ¶ 14 (ECF No. 12-1, at 6–7). According to Ms. Ali, "accurately recounting AII's litigation history required a significant hours expenditure," and time was also spent "researching the various unique privileges and laws protecting disclosure of human subject information," as well as sanctions. Id. Counsel also spent 11.6 hours preparing for and attending the December 16, 2022, hearing, which included a review of "not only written opinions and court orders, but also many pages of hearing

and trial transcripts" from talc litigation involving AII.  Id. ¶¶ 15–16 (ECF No. 12-1, at 7–8).

Finally, verification of counsels' billing entries and preparation of the present fee affidavit took

9.4 hours.  Id. ¶ 16 (ECF No. 12-1, at 7–8).  In addition to these arguments, Peninsula's counsel

submitted their billing log for this matter documenting the 142.0 hours of work performed.[4]  Billing

Log (ECF No. 12-4).

AII argues that Peninsula's requested fees are unreasonable.  AII's Resp. (ECF No. 19, at

2–3).  First, AII takes issue with the 9.2 hours Peninsula's counsel expended objecting to the

subpoena.  Id. at 8–9.  AII's position is that, because AII made an offer at the December 16, 2022,

hearing on Peninsula's motion to quash to narrow its original document request to only the names

of the litigation files Dr. Emory used to draft her article, Peninsula "failed to exercise billing

judgment in spending time opposing the subpoena in full rather than first working with [AII] to

reduce the subpoena's scope."  Id.  AII is mistaken.  For one, it did not offer to narrow the scope

of the subpoena until the December 16, 2022, hearing on Peninsula's motion to quash.  Hr'g Tr.

43:3–5, 49:3–8 (ECF No. 10) ("This is the first we're hearing that they would take a list of the

75 . . . cases.  We've never heard that before.").  At the hearing, the court ruled in Peninsula's

favor on the motion to quash.  In other words, Peninsula had no meaningful opportunity—or

incentive—to limit its opposition to the subpoena because the court ruled in Peninsula's favor

during the very discussion in which the offer was made.  Regardless, Peninsula's failure to accept

AII's offer cannot amount to a failure to exercise billing judgment when the offer did not remedy

Peninsula's initial, legitimate concerns regarding privileged human subject information.  See Hr'g

---

[4] Peninsula's counsel spent 189.5 hours working on this case but only requested 142.0 hours in their fee petition.  Billing Log (ECF No. 12-4, at 2).  The 47.5 hours of work for which Peninsula does not seek compensation account for 8.6 additional hours preparing for hearing on the motion to quash; 9.4 additional hours preparing the present fee affidavit; 9.6 hours on administrative tasks; 15.8 hours on internal meetings; and 4.1 hours for any time a second attorney was present on a call.  Id.

Tr. 43:6–11 (ECF No. 10) (stating "I think we would, Your Honor" in response to the court's question about whether Peninsula would have pursued its motion to quash had AII narrowed its request sooner).

AII also observes that "[Peninsula's] objections to nearly every request were essentially identical," and therefore it was unreasonable to spend over nine hours preparing them. AII's Resp. (ECF No. 19, at 9–10). I agree. Peninsula's billing log shows that 4.3 hours were spent drafting, editing, or revising the objections to the subpoena. Billing Log (ECF No. 12-4, at 3–4) (recording 0.8 hours on November 9, 2022; 2.0 hours on November 10, 2022; and 1.5 hours on November 15, 2022). The other objection-related time expenditures—over half of the requested 9.2 hours—involved analyzing the subpoena, researching potential arguments, conferring with co-counsel, and serving the objections. See, e.g., id. (showing entries to "[r]eview subpoena and analyze potential objections . . . [and] confer with [co-counsel] regarding strategy for the same"). But all of this time produced objections which, as AII argued, were not narrowly tailored or specific. Able attorneys like Ms. Ali and Ms. Lockwood should have reasonably completed the task of objecting in 4 hours' time.

Additionally, AII disputes the 47.6 hours spent drafting the motion to quash and the 64.2 hours spent on the reply. AII's Resp. (ECF No. 19, at 10–13). AII's primary contention is that these hours were unreasonable because the matter was not complex, did not present novel questions of law, and did not require any special legal skills. See id. For example, it points out that "the first six pages of the brief [in support of the motion to quash] are introduction and background on the subpoena only, and the vast majority of the brief involves arguments on timeliness, the only pertinent facts being scheduling orders." Id. at 10. To the extent Peninsula's counsel needed to conduct extensive background research, AII contends that it should not be on

the hook for the related fees because legal research to familiarize oneself with an area of law is part of "the attorney's basic education." Id. at 11 (citing Frei, 2006 WL 1409360, at *4). Regarding Peninsula's reply, AII claims that counsels' expenditure of "nearly 35 hours to draft and revise the Reply and nearly 30 hours to confer, analyze or research it, would not have been necessary if counsel were more experienced in litigation involving talc products." Id. at 12. The 35 hours spent drafting the reply is particularly unreasonable, AII contends, because the reply consistently "cite[s] back to the original Motion to Quash or rel[ies] on the same arguments and citations." Id.

As discussed earlier in the lodestar analysis, AII's arguments regarding the simplicity of the case rightly focus on the contested legal issue here—which was a basic discovery motion. But adding significantly to the complexity of the matter was AII's filing of almost 700 pages of exhibits in response to Peninsula's motion to quash. Having chosen to file those exhibits—which injected the alleged national importance of the study and necessarily required familiarity with several other talc cases—AII cannot justifiably complain that Peninsula's counsel undertook a lengthy review of the materials they urged on the court in the first place.

However, the court recognizes that the complexity of a case is not an excuse for attorneys to avoid using billing judgment. Additionally, this court has previously adjusted its lodestar calculation downward to account for excessive hours spent on "basic research." Torres-Baez, 2022 WL 15482678, at *10. In Torres-Baez, this court found that 15 hours was an excessive amount of time to spend researching damages and jury verdicts in excessive force cases because these issues were neither novel or complex, and counsels' time entries "[did] not demonstrate why this many hours were necessary." Id. Because Peninsula had already conducted background research into the Gref litigation and other talc cases prior to the filing of AII's opposition, and because many of

18

the arguments raised in Peninsula's initial motion to quash were simply reiterated in its reply brief, I find that 64.2 hours is an unreasonable amount of time for the work performed on the reply brief. Given Ms. Ali's and Ms. Lockwood's experience, 44.2 hours would have been a more reasonable amount of time to expend preparing the reply brief. As such, a reduction of 20.0 hours is appropriate. However, I find that the 47.6 hours expended on the motion to quash were reasonable.

Regarding the hours spent on the motion for attorneys' fees, AII argues that fees incurred drafting a fee petition are "not recoverable" and "inappropriate," citing In re Am. Kidney Fund, Inc., No. TDC-17-1787, 2019 WL 1894248, at *8 (D. Md. Apr. 29, 2019). AII's Resp. (ECF No. 19, at 13–14). Additionally, AII claims the fees requested are unreasonable because, having already conducted research on sanctions while working on earlier motions, "counsel expended an additional 5.2 hours researching Rule 45 sanctions, fee petitions, and 'relevant rates.'" Id. at 13 (citing Billing Log (ECF No. 12-4)). Given the length of the motion and Ms. Ali's supporting affidavit, as well as Peninsula's counsels' experience, AII believes it is "wholly unbelievable" that preparation of the fee petition would require 9.4 hours of work. Id.

AII is incorrect that fees incurred drafting a fee petition are not recoverable. This court considered the issue directly in Lismont v. Alexander Binzel Corp., 47 F. Supp. 3d 443 (E.D. Va. 2014) and noted that district courts within the Fourth Circuit, as well as other circuit courts, have allowed attorneys to recover fees for preparation of fee petitions. Lismont, 47 F. Supp. 3d at 454–55. This court followed that trend, holding that "time spent preparing [a] fee affidavit is recoverable." Id. AII's citation to In re Am. Kidney Fund does not change the analysis. In In re Am. Kidney Fund, the American Kidney Fund ("AKF") was served with third-party subpoenas by United Healthcare ("United") in relation to litigation pending in the United States District Court for the Southern District of Florida. In re Am. Kidney Fund, Inc., 2019 WL 1894248, at *1–3.

19

Following court mediation, an agreement was reached on what material would be turned over to United, and a discovery order was entered memorializing that agreement. Id. at *3. AKF then requested an award of attorneys' fees for work performed in connection with its compliance with the court's order—including fees accrued preparing the fee petition itself. Id. The court held that AKF could not recover the fees associated with preparing the fee petition "as those fees were not incurred in the course [of] complying with United's subpoenas," citing In re Am. Nurses Ass'n, 643 App'x 310, 314 (4th Cir. 2016). Id. at *8 (cleaned up). In that case, the Fourth Circuit held that a non-party served with a third-party subpoena could recover fees from the serving party under Federal Rule of Civil Procedure 45(d)(2)(B)(ii), but only "where the attorney's fees are actually necessary to [the] non-party complying with a discovery order"—which did not apply to costs incurred preparing a fee petition. In re Am. Nurses Ass'n, 643 App'x at 314.

The reasoning used in In re Am. Kidney Fund and In re Am. Nurses Ass'n does not apply here. Both cases involved Federal Rule of Civil Procedure 45(d)(2)(B)(ii), which says that when a recipient of a third-party subpoena objects to the disclosures, the disclosures "may be required only as directed in [an] order" compelling production. Fed. R. Civ. P. 45(d)(2)(B)(ii). In both cases, the court had entered an order under this rule compelling production of some of the material requested in the third-party subpoena. See In re Am. Kidney Fund, Inc., 2019 WL 1894248, at *3; In re Am. Nurses Ass'n, 643 App'x at 314. Here, Rule 45(d)(2)(B)(ii) is not at issue because the court has quashed AII's subpoena in full and directed Peninsula to prepare and file an accounting of its fees. The fees sought are the costs of compliance with that order as a sanction for AII's noncompliance under Rule 45(d)(1).

Nonetheless, I am somewhat persuaded by AII's argument that the hours devoted to preparing the fee petition were unreasonable. Peninsula's counsel conducted research on sanctions

20

and fees while preparing the motion to quash and the reply, but the posture of the case at that stage was different from the posture following the court's ruling. Considering the different legal authorities needed to support the sanction argument in the petition, some additional research was justified. I thus find that 6.0 hours was a reasonable expenditure for preparation of the present fee petition.

AII also alleges generally that Peninsula's billing log is "rife with vague entries" and block billing. AII's Resp. (ECF No. 19, at 15–18). Specifically, AII identifies 33 entries in the billing log that it claims are vague or constitute block billing. Id. at 16–17. For example, vague entries identified by AII include descriptions such as "draft motion to quash," "legal research on the same," or "draft reply brief." Id. at 15–17. The block billing entries identified by AII involve several hours-long entries for drafting documents, each of which are directly followed by entries for legal "research [on or regarding] the same." Id. at 16–17. AII alleges that it and the court "[have] no way of determining whether these hours were 'reasonably expended'" because it is impossible to tell to what extent they were used pursuing repetitive or unsuccessful arguments. Id. at 15.

As this court has recognized, "the issue with vague entries is the lack of sufficient facts to identify the nature of the work performed." Torres-Baez, 2022 WL 15482678, at *9 (citing Crump v. U.S. Dep't of Navy by & through Mabus, 245 F. Supp. 3d 692, 709 (E.D. Va. 2017)). Similarly, the "the concern with block billing is that it can inhibit a court from accurately assessing the reasonableness of a fee request due to the lack of specification for time spent on each individual task." Id. at *7 (citing Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012); Guidry, 442 F. Supp. at 294). Here, I agree with AII that Peninsula's counsels' billing log contains vague entries and block billing which impair the court's ability to assess the

21

reasonableness of the hours expended.  As such, a 20% reduction from the total number of hours requested is warranted.  See Leebcor Servs., LLC, 2022 WL 3337793, at *9 (reducing the requested hours by 20% to account for block billing); SunTrust Mortg., Inc., 933 F. Supp. 2d at 778 (concluding that a 20% reduction in the claimed hours was reasonable to account for block billing); Route Triple Seven Ltd. P'ship, 127 F. Supp. 3d at 621–22 (noting that "courts confronted with time records infected with lumping have reduced fee claims by percentages ranging from 10% to 20%").

Finally, the court notes that AII did not directly challenge the reasonableness of Peninsula's expenditure of 11.6 hours preparing for and attending the hearing on the motion to quash. Nonetheless, I find that 11.6 hours was a reasonable amount of time to spend on that work and decline to make any downward adjustment to this category of claimed hours.  See Coleman Co., Inc. v. Team Worldwide Corp., No. 2:20-cv-351, 2022 WL 2163840, at *5 (E.D. Va. May 9, 2022) (awarding 12.4 hours in total to two attorneys for preparation in advance of and attendance at a hearing on a motion for sanctions).

Based on the foregoing lodestar factors, Peninsula's motion, its attorney's affidavit, and the court's own knowledge and experience in similar disputes, the court finds that 90.72 hours is a reasonable expenditure for the work performed in this matter.  This amount represents the 142.0 hours requested by Peninsula, minus the 28.6 hour adjustment reflected above and further reduced by 20% to account for block billing and vague entries.  The court also finds that Peninsula's request for $400.45 in filing and transcript costs is reasonable.  Multiplying a reasonable hourly rate of $500 by the 90.72 hours reasonably expended, and adding the filing and transcript costs, the resulting lodestar amount is $45,760.45.

**B.     A Downward Adjustment of the Lodestar Amount is Warranted for Time Spent on Peninsula's Unsuccessful Timeliness Claim.**

Calculation of the lodestar amount "does not end the inquiry." Hensley, 461 U.S. at 434. Instead, "the court must determine whether the lodestar amount should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims." Denton v. PennyMac Loan Servs., LLC, 252 F. Supp. 3d 504, 528 (E.D. Va. 2017) (citing Robinson, 560 F.3d at 244). This determination requires an assessment of whether the unsuccessful claims, if any, were related to the successful claims. The United States Supreme Court provided guidance on this assessment in Hensley:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved. . . . In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley, 461 U.S. at 434–35 (cleaned up).

AII's position is that, because the court's order granting Peninsula's motion to quash "was based on its finding that [AII's] subpoena imposed an 'undue burden,'" the timeliness argument Peninsula made in support of its motion to quash was not successful. AII's Resp. (ECF No. 19, at 14). AII argues that the unsuccessful timeliness claim does not share a "common core of facts" with the undue burden claim on which Peninsula was successful, and therefore they are unrelated. Id. (citing Brodziak v. Runyon, 145 F.3d 194, 197 (4th Cir. 1998)). Consequently, AII contends

23

that the lodestar amount should be reduced to account for the time Peninsula's counsel expended advancing its unsuccessful and unrelated timeliness claim. Id. I agree.

In granting Peninsula's motion to quash, the court made clear that its ruling rested on Peninsula's undue burden argument alone. See Order (ECF No. 11) ("I conclude that AII's subpoena imposes an undue burden and therefore must be quashed under Rule 45(d)(3)(A)(iv)."). Additionally, on the record at the December 16, 2022, hearing, the court clarified that "[i]f the only issue were the timeliness [of the subpoena], I probably would not find it unreasonably burdensome." Hr'g Tr. 52:10–12 (ECF No. 10).  As such, Peninsula's timeliness argument was not successful.

Not only was Peninsula's timeliness argument unsuccessful—it was also unrelated to the undue burden argument on which Peninsula was awarded relief.  This is not a case in which Peninsula's timeliness and undue burden arguments "involve[d] a common core of facts." Hensley, 461 U.S. at 435.  Rather, Peninsula presented "different claims for relief that [were] based on different facts." Id. at 434.  In advancing its timeliness claim, Peninsula relied on Gref's discovery schedule, but in advancing its undue burden argument, Peninsula relied on its (and Dr. Emory's) tenuous connection to the case and the confidential nature of the subpoenaed material. These sets of facts—albeit both tied to the Gref litigation—are distinctly different.  For those reasons, a downward adjustment of the lodestar figure is warranted to account for the time Peninsula's counsel spent advancing their unsuccessful and unrelated timeliness argument.

Peninsula's counsels' billing log presents a number of entries clearly associated with their timeliness argument, including: 0.8 hours for "legal research regarding timeliness;" 0.4 hours to "review and analyze transcript from Gref hearing concerning timeliness and other issues;" 0.1 hours to "review underlying case docket concerning discovery schedule and other relevant events;"

0.2 hours to "review docket entries in underlying Gref litigation related to discovery deadlines;" 0.6 hours to "research motions to quash delayed discovery requests;" and 0.2 hours for "communications with client regarding Gref discovery conference."[5]  Billing Log (ECF No. 12-4, at 3–6).   In total, these entries account for 2.3 hours of work, which equates to $1,150.00 at the $500 rate imposed above.  Adjusting the lodestar amount of $45,760.45 downward, the new total is $44,610.45.

**C.     Further Downward Adjustment of the Lodestar Amount Based on Peninsula's Overall Degree of Success is Not Warranted.**

After the court has removed any fees accrued on unsuccessful claims unrelated to the successful claim, the court must also "adjust[] the lodestar figure to take into account the 'degree of success enjoyed by the plaintiff' on his successful claims." Denton, 252 F. Supp. at 529 (citing Grissom, 549 F.3d at 321 (quoting Johnson, 278 F.3d at 337)).  Here, Peninsula was fully successful in seeking injunctive relief on the basis that AII's subpoena imposed an undue burden, and therefore there was no limited or partial success on that claim that would warrant a downward adjustment of the lodestar figure.

**CONCLUSION**

For the foregoing reasons, this court GRANTS Peninsula's motion for attorney's fees, (ECF No. 12), and awards Peninsula such fees and costs of $44,610.45.  Since this discovery

---

[5] In addition to these hours, Ms. Ali and Ms. Lockwood each spent numerous hours reviewing AII's filings, researching legal arguments, and conferring with each other about litigation strategy—work which no doubt involved, to some degree, Peninsula's unsuccessful timeliness argument.  However, as discussed above, the language in the billing log provided to the court makes it difficult to parse the amount of time that was devoted to Peninsula's timeliness argument in these general review, research, and strategy sessions.  As such, reductions for work on the timeliness argument done in these general sessions are properly reflected by the 20% reduction made above for vague entries and block billing.

sanction is within the jurisdiction of the undersigned magistrate judge, this order will fully resolve

the case unless either party objects within 14 days under Federal Rule of Civil Procedure 72(a).

                                    /s/
                    Douglas E. Miller
                    United States Magistrate Judge

                    DOUGLAS E. MILLER
                    UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 16, 2023